IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **BLAKE ALAN RIPPLE,** | § § § | |
| *Plaintiff,* | § § | Civil Action No. |
| **v.** | § § | _____ |
| **MARBLE FALLS INDEPENDENT SCHOOL DISTRICT AND CORD WOERNER, INDIVIDUALLY** | § § § § | |
| *Defendants.* | § | |

**FIRST ORGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID DISTRICT COURT:

Now comes Blake Alan Ripple (Plaintiff herein), and brings this Complaint against the Marble Falls Independent School District ("hereinafter "the District") and Cord Woerner, Individually (hereinafter referred to as Coach Woerner") and both collectively referred to as Defendants. Plaintiff reserve the right to re-plead if new claims and issues arise upon further development of the facts, and as permitted by law.  In support thereof, Plaintiff will shows as follows:.

**INTRODUCTION**

The issue of protecting young men who play football has been of prime attention and concern to educators all over the country including and especially those at the Texas Education Agency ("TEA"), the University Interscholastic League ("UIL") and even with members of the School Board with the Marble Falls Independent School District.  Notwithstanding this attention and concern about maintaining the health of young athletes Coach Woerner and other staff with

the football team failed to pay necessary attention and concern to Blake Ripple, a high school student playing football at the Marble Falls Independent School District.

Specifically, Ripple suffered over thirty concussions or sub-concussions while under the supervision and direction of Cord Woerner, Coach of the high school football team. Even though Woerner and other staff knew that Plaintiff had been injured and was in a fragile condition he continued to be put into sitiuations in practice and in games that caused injury to Plaintiff.

At one time Ripple was a National Honor Society Student and "Academic All-District." Now he is unable to live independently, let alone go to college.

At one time was one of the highest rated lineman in the Central Texas area and was receiving interest for scholarships from a number of Division I colleges.

Because of his injries he has applied to the Department of Assistive & Rehabilitative Services ("DARS") for services.

Importantly, during a significant time that Plaintiff was playing football, and specifically after he reached the age of majority, he was neither provided a medical release or waiver of liability form to sign by School District personnel.

Plaintiff believes the School District and is responsible for his injuries and damages, as more specifically described below. As such he brings forth claims puruant to for violations of the Fourteenth Amendment to the Constitution of the United States pursuant to 42 U.S.C. §1983, for violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794a ("Section 504") and for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 while Woerner is liable alsdo pursuant to Section 1983 and but also as to the Texas Education Code, Section 22.0511. Such equitable and remedial actions pursuant to these acts include, but are not limited

to, damages, loss of opporunity, reimbursement of out-of-pocket expenses, attorney fees and costs, as well as other forms of equitable and remedial relief.

## JURISDICTION

This case is brought to vindicate civil rights and other rights protected under federal law. Jurisdiction is proper in this Court under 28 U.S.C. §§1331 and 1343.

Furthermore, this Court and supplemental jurisdiction over various state and common law claims pursuant to 28 U.S.C. §1367.

## VENUE

The defendants reside in this Distict, and all defendants are residents of this District.  In addition, all or a substantial part of the events giving rise to this claim occurred in whole or in part in this District. Venue is proper under 28 U.S.C. §1391.

## PARTIES

He is a resident of Granite Shoals, Burnet County, Texas.

Marble Falls Independent School District is a school district organized under the laws of the State of Texas.  At all times pertinent to this case, Plaintiff was a student at the Marble Falls Independent School District.  They may be served by and through their Superintendent, Dr. Rob O'Connor at 1800 Colt Circle, Marble Falls, Texas 78654.

Cord Woerner was, at all relevant times, an employee of the Marble Falls Independent School District.  One function he performed was as an athletic coach for the High School's football team.  He may be served at 1800 Colt Circle, Marble Falls, Texas 78654.

## FACTUAL RESUME

Plaintiff was born on September 10, 1992 and had played football at Marble Falls High School for over three years.

On October 23, 2009, Plaintiff and his team were playing goal line defense (helmet-to-helmet contact). During the last few minutes of the game, Plaintiff suffered a head injury. Immediately after the injury, Plaintiff was unable to remember what happened, was unsteady on his feet, staggered, and complained of nausea, dizziness, and a severe headache.

Plaintiff's trainer briefly talked to Plaintiff on the sidelines after the injury, but he failed to render Plaintiff aide and did not continue to observe Plaintiff.

After the October 23, 2009 game, Plaintiff's parents expressed their concerns for Plaintiff's injury to one of Plaintiff's trainers. Plaintiff's trainer simply told Plaintiff's parents that Plaintiff would be fine after taking a shower.

Plaintiff's father then informed Plaintiff's Coach that they were wanted to take Plaintiff to the hospital. Plaintiff's Coach told Plaintiff's father that Plaintiff would probably be fine the next morning.

After receiving no concern from Plaintiff's trainers and coaches, Plaintiff's parents took Plaintiff to the hospital on the evening of October 23, 2009.

At the hospital, the nurse asked where Plaintiff's trainer or Coach was, explaining that they would have the necessary paperwork regarding Plaintiff's head injury. Plaintiff's parents informed the hospital that neither Plaintiff's trainer nor Coach was willing to accompany them to the hospital. Plaintiff was given a cat scan and was sent home with orders to see Plaintiff's primary physician on Monday.

On Monday, October 26, 2009, Plaintiff's parents took Plaintiff to see Plaintiff's general practitioner, Dr. Franz. Dr. Franz referred Plaintiff to Dr. Buxton, a Neuro doctor.

Since the injury on October 23, 2009, Plaintiff frequently complained of headaches and an upset stomach. Plaintiff also experienced episodes where his right side shakes involuntarily, like a tremor. Plaintiff continues to be seen by both Dr. Franz and Dr. Buxton.

Dr. Buxton requested to see the helmet Plaintiff had been wearing when the head injury occurred.  Before Plaintiff's next appointment with Dr. Buxton, Plaintiff went to the school to retrieve his helmet.  As Plaintiff was leaving the locker room, he was stopped by Coach Kyle Futterll who inquired as to what Plaintiff was doing with his helmet.  Plaintiff explained that his doctor wanted to see the helmet and Coach Futterll called Coach Woerner.  Coach Woerner declared that it would be a UIL violation to take the helmet off campus.  Plaintiff was forced to leave his helmet at the school.  Plaintiff's helmet has since disappeared.

On December 12, 2009, Plaintiff and two of his friends were in a car accident while on their way to school.  The Tahoe that they had been riding in rolled three times.  Due to Plaintiff's previous head injury and for being under care of doctors for a concussion, Plaintiff was transported to Seton Highland Lakes Hospital as a precaution.  At the hospital a cat scan was performed.  The cat scan revealed that there were no changes to the previous concussion, but five nodules were found on Plaintiff's thyroid.  At this time, Plaintiff's family's focus thus shifted to this medical issue.

On March 12, 2010, Plaintiff had surgery to remove the nodules from his thyroid.

After Plaintiff's surgery, Plaintiff was still complaining of dizziness.  Plaintiff also experienced frequent "black outs" and his headaches became progressively worse.

Plaintiff began seeing Dr. Everette Heinze.  After several appointments with Dr. Heinze, Dr. Heinze referred Plaintiff to the Mayo Clinic in Rochester, Minnesota.

Plaintiff was seen and treated at the Mayo Clinic from May 18, 2010 until May 27, 2010.  Doctors at the Mayo Clinic believe that Plaintiff may have an autonomic dysfunction brought on by the head injuries Plaintiff had experienced. Plaintiff was told that he could eventually play football again, but that it would take some time before he could get back out on the field.

After returning home from the Mayo Clinic, Plaintiff continued to see Dr. Heinze.

Plaintiff and his parents met with Coach Woerner before summer practice to explain Plaintiff's medical limitations. Coach Woerner told Plaintiff that if Plaintiff could not perform at 110%, that he did not want Plaintiff on the team.

Woerner continued to punish Plaintiff with excessive physical exercises and drills in order to force him to play for the team.

Plaintiff had hoped to work up his strength slowly to be able to play football again.

On September 10, 2010 Blake turned eighteen years old. To the best belief of Plaintiff he never signed any forms with the physical education department or football team in particular so he could participate in football or release or waive any claims of injuries.

On one occasion at practice, Coach Woerner forced Plaintiff to run so hard that that evening Plaintiff started to bleed from his ears and nose. Plaintiff's parents took Plaintiff to the emergency room, where they were told that Plaintiff was severely dehydrated.

Plaintiff's parents again informed Coach Woerner of Plaintiff's medical limitations and that Plaintiff's doctors did not believe that Plaintiff would be ready to play again until midseason.

Around this time, Plaintiff's parents had been complaining and corresponding with the Administration Office at Plaintiff's school. The Administration Office suggested that Plaintiff's parents just "relax" to avoid any retaliation against Plaintiff.

Despite Coach Woerner's receiving frequent reminders of Plaintiff's medical condition and diminished physical abilities, Coach Woerner continued to punish Plaintiff with excessive physical exercises and drills in order to force him to play for the team. In fact, he put Plaintiff on the field at the teams' second scrimmage, where he again experienced injuries.

Plaintiff's parents were not present at this game because they were told that Plaintiff would not be playing.

Plaintiff was so disabled at this time he was placed on homebound educational services. Also Around this time, Plaintiff started receiving letters from Division I colleges across the nation who were looking at Plaintiff for his exemplary previous football performances. However, Coach Woerner withheld the letters from Plaintiff until Plaintiff started summer training in August.

During Plaintiff's senior year of high school, he still complained of and experienced headaches, an upset stomach, vertigo, and loss of sensation on the left side of his body. Yet, Plaintiff spent a lot of time on the field and would at times play offense. Plaintiff's team was believed to be able to make it to the playoffs, Coach Woerner put an excessive amount of pressure upon Plaintiff to both practice and play. Plaintiff believed he would be punished by Coach Woerner if he did not practice or play.

Plaintiff recalls numerous times where he would come off of the field and tell his coaches or trainers that he had a headache. Plaintiff was told not to let his team down and to get back out on the field. Plaintiff knew that if he did not continue playing, that there would be retaliation against him at school and in the community.

Also during Plaintiff's senior year, Coach Woerner admitted to Plaintiff that he had released Plaintiff's confidential medical information to scouts, without Plaintiff or his parents' permission.

In the fall of his senior year, Plaintiff suffered a compartment syndrome injury and was taken off the field by an ambulance. Once again, none of Plaintiff's trainers or coaches accompanied Plaintiff to the hospital.

On March 28, 2011, Plaintiff had surgery to remove his enlarged tonsils.

After his surgery on March 28, 2011, Plaintiff continued to experience and complain of headaches, an upset stomach, and vertigo. Plaintiff became exceedingly more ill and was unable to go back to school. Plaintiff remained in homebound services until he was able to graduate.

Plaintiff has also been seen by neuro doctor Dr. Bertelson and neuro psychiatrist Dr. Richard

Temple at CORE Health in Dripping Springs, Texas.

Dr. Bertelson and Dr. Temple, along with Dr. Heinze, believe that Plaintiff suffered anywhere from thirty to forty concussions and sub-concussive hits while playing football for his high school.

At this time, Plaintiff is unable to live independently.

Plaintiff applied to Department of Assistive and Rehabilitative Services ("DARS") so that he could attend CORE Health. However, due to constant vomiting, Plaintiff is currently unable to attend CORE.

Plaintiff's doctors have advised Plaintiff to file for disability.

Plaintiff and his parents are unsure as to what Plaintiff's future is going to be. Plaintiff was a National Honor Society member as well as an Academic All District student, yet now Plaintiff cannot even attend college on a daily basis.

Plaintiff competed in the state linemen's challenge before the start of his junior year of high school and qualified 14 out of 74 on the state level. Plaintiff had the highest points in the greater Austin area for the linemen's challenge, yet now Plaintiff cannot play football.

In short, the School District has covered up the facts surrounding Plaintiff's injuries; it has refused to investigate or appropriately respond to the report of a serious injury; it has retaliated against an injured child, it has branded his family as a problem for the School District; and it has refused to alter its educational services in any meaningful way to accommodate the injury that Coach Woerner and other members of the football program caused.

## **STATE ACTION**.

The Plaintiff incorporates by reference all the above-related paragraphs with the same force and effect as if herein set forth.

The School District Defendant was at all times and in all matters acting under color of state law

when they permitted Plaintiff to be subjected to the wrongs and injuries set forth herein.

## CLAIMS AGAINST THE SCHOOL DISTRICT PURSUANT TO 42 U.S.C. §1983

The Plaintiff incorporates by reference all the above-related paragraphs with the same force and effect as if herein set forth.

Plaintiff has a right to bodily integrity that is protected by the Constitution of the United States. Included within that right is the right to be free of restraint, punishment, or physical assault and battery by school officials.

The exercises, drills and field play time, which Coach Woerner required of Plaintiff, were a direct cause of the injury to Plaintiff.

Coaches, under all available literature regarding their duties are to be conscious of safety, protection and well-being of students, and are to insure that activities required are appropriate for the age, maturity, experience, and ability of the individual.

Coach Woerner was on notice of these requirements for his profession. These requirements show, without doubt, that he knew that the activities he was requiring were in violation of the core principles of his assigned position.  No rational or reasonable coach would have thought differently.

The School District failed to train Coach Woerner, failed to supervise or monitor Coach Woerner, and failed to evaluate his suitability for his position.  The potential for injury in athletic activities is so great and the consequences of a failure to train, supervise and monitor coaches is so great that a decision not to train and supervise and monitor is an informal policy and custom of the school that is directly related to the eventual injury to Plaintiff.

The School District was consciously indifferent to the rights of Plaintiff when they failed to train, supervise, monitor or evaluate Coach Woerner's suitability to be a high school football coach.

## CLAIMS AGAINST CORD WOERNER PURSUANT TO 42 U.S.C. §1983

The Plaintiff incorporates by reference all the above-related paragraphs with the same force and effect as if herein set forth.

Coach Woerner is directly responsible for the injuries to Plaintiff.

Although facially entitled to qualified immunity, his immunity is lost when he is consciously indifferent to well settled constitutional rights and is consciously indifferent with respect to his duty to respect those rights.

The right to bodily integrity is a well-settled constitutional right. The right to be free from assault and battery is a well-settled subset of that right. No rational or reasonable person who was a coach could believe that there were uncertain or unclear boundaries that would have permitted an intentional or reasonably certain injury to a student athlete in this circumstance.

The exercises, drills and playing of games that Coach Woerner required of Plaintiff violate routinely published and available ethical codes for coaches and instructors of athletics. Coaches, under all available literature regarding their duties are to be conscious of safety, protection and well-being of students, and are to insure that activities required are appropriate for the age, maturity, experience, and ability of the individual.

Coach Woerner was on notice of these requirements for his profession. These requirements show, without doubt, that he knew that the activities he was requiring were in violation of the core principles of his assigned position. No rational or reasonable coach would have thought differently.

Picking these particular exercises and activities for Plaintiff despite knowing Plaintiff's limitations, as well as with the motivation of punishment or discipline, is a conscious disregard of the right to bodily integrity.

Alternatively, the actions of Coach Woerner in requiring these exercises and activities of Plaintiff is conduct that "shocks the conscience" of the Court because it is so far beyond the pale that no

rational or reasonable adult would think it appropriate in any circumstances, much less a trained athletics instructor.  This is especially shocking given the motivation to violate the rights of Plaintiff – when the violation was so utterly apparent that it could be said to be an intent to injure, or so close to intent as to be reasonably certain that injury would occur.

### CLAIMS PURSUANT TO SECTION 504 OF THE REHABILITATION ACT. .

The Plaintiff incorporates by reference all the above-related paragraphs with the same force and effect as if herein set forth.

The actions of the School District *after* the injury caused by Coach Woerner's conduct and the School District's policy demonstrate violations of Section 504 of the Rehabilitation Act, 29 U.S.C. §794 ("Rehabilitation Act"). .

After the injury, Plaintiff became a qualified individual with a disability in the United States, as defined in 29 U.S.C. § 705(20) with his disability affecting major life activities; i.e., walking, sitting, standing, learning, and receiving education.

The School District receives federal financial assistance, as defined by 29 U.S.C. §794 and, as such, may not discriminate against a person because of their disability.

Solely by reason of his disability, Plaintiff was excluded from the educational activity that was available to well-bodied and uninjured students – a violation of the Rehabilitation Act.

The School District also grossly mismanaged Plaintiff's educational plan and their own policies and procedures in failing to accommodate his limitations that existed because of the injury.  The gross mismanagement of his educational plan was also a violation of the Rehabilitation Act.

### CLAIMS PURSUANT TO THE AMERICANS WITH DISABILITIES ACT

The Plaintiff incorporates by reference all the above-related paragraphs with the same force and effect as if herein set forth.

The actions of the School District *after* the injury caused by Coach Woerner's conduct and the School District's acts and omissions demonstrates violations of the Americans with Disabilities Act, 42 U.S.C. §12131, et seq ("ADA").

Due to his status as a disabled student under the law, and due to the injury caused by Coach Woerner and the School District, Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. §12131(2) with his disability affecting major life activities - walking, sitting, standing, learning, and receiving education.

The School District is a "public entity" as defined in 42 U.S.C. §12131(1), and receives federal financial assistance so as to be covered by the mandate of the ADA.

The School District is a facility whose operation constitutes a program and services for ADA purposes.

The School District failed and refused to reasonably accommodate Plaintiff's disabilities and modify their educational services in violation of Title II of the ADA. Such failures caused, and continue to cause injuries to Plaintiff.

## STATE LAW CLAIMS

The Plaintiff incorporates by reference all the above-related paragraphs with the same force and effect as herein set forth.

Cord Woerner violated Texas Education Code Section 22.0511 when he violated numerous mandatory laws, rules and directives such violations causing injuries to Plaintiff.

## RATIFICATION

Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

The School District Defendants ratified the acts, omissions and customs of school district

personnel and staff.

As a result the School District Defendants are responsible for the acts and omissions of staff persons who were otherwise responsible for the safety of Blake.

## PROXIMATE CAUSE

Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

Each and every, all and singular of the foregoing acts and omissions, on the part of Defendants, taken separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## DAMAGES

As a direct and proximate cause of the above-referenced conduct, Plaintiff suffered the following injuries, and seeks recovery for:

a. Physical pain and suffering from the injury,

b. Mental anguish associated with the injury, the circumstances leading to the injury, the retaliation, and other subsequent events,

c. Past & Future reasonable and necessary medical expenses,

d. Future loss of wage earning capacity,

e. Costs of a free appropriate education that accommodates Plaintiff's disability,

f. Any other damage that is properly recoverable under Section 1983, §504 and under the Americans with Disabilities Act,

g. Any other type of damage that is properly recoverable and proven at time of trial.

## PUNITIVE DAMAGES

Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

The acts and omissions of the Defendant school district over the relevant time period, and after receiving repeated notice of such acts and omissions, and now the destruction of such evidence not only shock the conscience, but satisfies criteria for punitive damages, as contemplated by Section 1983.

## ATTORNEY FEES

It was necessary for Plaintiff to retain the undersigned attorneys to file this lawsuit. Plaintiff is entitled to an award of attorney fees and costs pursuant to 42 U.S.C. §1988 and 42 U.S.C §2000d et seq.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs respectfully request that after a trial herein, they recover against Defendants, the following relief:

a. Judgment for all of their actual damages, both general and special, as described above;

b. Pre-judgment and post-judgment interest at the highest rate allowed by law;

c. Costs of court;

d. Attorney's fees and other costs of representation;

e. Exemplary damages where alleged, and

f. Such other relief to which they may be entitled, both in law and in equity, or both.

Respectfully submitted,

**Cirkiel & Associates, P.C.**

Complaint – Page 14

    /s/ Martin J. Cirkiel
Martin J. Cirkiel
State Bar No. 00783829
1901 E. Palm Valley Blvd.
Round Rock, Texas 78664
(512) 244-6658
(512) 244-6014 (fax)
marty@cirkielaw.com

**The Zimmerman Law Firm**

Michael Zimmerman
State Bar No. 22271400
3501 W. Waco Drive
Waco, Texas 76710
(254) 752-9688
(254) 752-9680 (fax)
mzimmerman@thezimmermanfirm.com